IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TREVE ABEL, # 328-755 | * | |
|     Petitioner | | |
| | * | |
|      v. | | Civil Action No. RWT-11-3366 |
| | * | |
| BOBBY P. SHEARIN, et al | | |
|     Respondents | * | |

********

**MEMORANDUM OPINION**

Pending is Treve Abel's ("Abel") Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Respondents, by their counsel, have filed a response with exhibits, ECF No. 11, to which Petitioner, who is self-represented, filed an amended Reply with exhibits, ECF Nos. 19, 25. After considering the pleadings, exhibits, and applicable law, the Court determines a hearing is unnecessary. *See* Local R. 105.6 (D. Md. 2011); Rule 8, "Rules Governing Section 2254 Proceedings in the United States District Courts"; *see also Fisher v. Lee,* 215 F.3d 438, 455 (4th Cir. 2000) (stating that there is no entitlement to a hearing under 28 U.S.C. § 2254(e)(2)). For reasons to follow, the Petition will be DENIED AND DISMISSED.

**BACKGROUND**

Abel is challenging his conviction in 2005 after a bench trial in the Circuit Court for Prince George's County, Maryland for first-degree murder and use of a handgun in the commission of a crime of violence. On June 17, 2005, the Court sentenced him to life imprisonment plus a consecutive twenty-year term.

## I.     FACTUAL BACKGROUND

On September 28, 2004, Rochelle Forgerty was found dead in her bedroom with a single gunshot wound to her head. Fogerty and Abel had been in a relationship and shared an apartment with Fogerty's sister. A friend of Fogerty's sister, Saudia Lee, was in the apartment on the evening of Fogerty's death. Trial Tr. at 35. Lee overheard an argument between Fogerty and Abel, heard a "loud explosion," and observed Abel leaving the bedroom where she found Fogerty's body. *Id*. at 38-39.

At trial, Abel testified that the shooting was an accident. *Id*. at 120-22, 131-36. He admitted that after the shooting, he fled the apartment he shared with the victim, taking the gun and shell casings, which he had hidden under his shirt. *Id*. at 124, 131. As he was running away, he realized that he did not have his cell phone, so he returned to the apartment, kicked the bedroom door open, and grabbed his phone and passport before fleeing. *Id*. at 125-26. He stated that he threw the gun in Sligo Creek. *Id*. at 76, 137. Abel, a Jamaican citizen, flew to Jamaica the next day, where he was arrested and waived extradition to the United States. *Id*. at 62. He was convicted of first degree murder and use of a handgun in the commission of a felony or crime of violence and on June 17, 2005 he was sentenced to life in prison plus a consecutive 20-year sentence.

## II.     PROCEDURAL BACKGROUND

Abel appealed his conviction to the Court of Special Appeals of Maryland where he raised two allegations of error: whether the evidence was sufficient to sustain a conviction for first-degree and second-degree murder; and 2) whether the trial court erred in failing to merge the first-degree assault conviction into the first-degree murder conviction. Resp. Ex. 5. On

November 13, 2007, the Court of Special Appeals of Maryland merged the first-degree assault into the first-degree murder conviction, and affirmed all other judgments in an unreported opinion. Resp. Ex. 7.

Abel filed a Petition for a Writ of Certiorari in the Court of Appeals of Maryland posing the question whether the evidence was sufficient to sustain his murder convictions.  Resp. Ex. 8. On February 15, 2008, the Court of Appeals of Maryland denied certiorari review. Resp. Ex. 9.

On July 16, 2009, Abel filed a pro se Petition for Post-Conviction Relief in the Circuit Court for Prince George's County and a supplemental petition by his counsel on January 6, 2010. Resp. Ex. 10-11. Abel's petition alleged that (A) his sentence for first-degree murder was illegal because it violated the Doctrine of Specialty; (B) his rights under the Vienna Convention were violated when he was not informed of his rights to consult with officials from his home country, Jamaica; (C) his waiver of extradition was not knowing and voluntary; (D) trial counsel was ineffective for (1) failing to object to his unknowing and involuntary extradition to the United States, (2) failing to investigate the case, and (3) not re-enacting the shooting; and (E) appellate counsel was ineffective for failing to raise on appeal that his extradition waiver was not knowing and voluntary. Resp. Ex. 10-11.

A hearing was held on the Petition for Post-Conviction Relief in the Circuit Court for Prince George's County on September 21, 2010, at which Abel and his trial attorney testified. Post-conviction relief was denied by Memorandum Opinion filed on January 10, 2011. Resp. Ex. 15.

Abel filed an Application for Leave to Appeal the denial of post-conviction relief asserting that (A) his sentence was illegal because it violated the Doctrine of Specialty, and he

had standing to challenge extradition as an affected third party to the treaty; (B) his extradition waiver was not knowing and voluntary because he was not informed he was facing first-degree murder charges; and (C) his trial counsel was ineffective for failing to inform him of his right to contact the Jamaican consulate. Resp. Ex. 16.  On July 27, 2011, the Court of Special Appeals of Maryland summarily denied leave to appeal. Resp. Ex. 17.

## CLAIMS PRESENTED

Abel claims: (1) his sentence violated the Doctrine of Specialty and he had standing to challenge his extradition as an affected third party**;**[1] (2) his waiver of extradition was not knowing and voluntary; (3) trial counsel was ineffective for failing to inform him of his right to contact the Jamaican consulate; and (4) the trial court did not have jurisdiction over his case. ECF No. 1 at 2-14.  The Court will address each argument in turn.

## DISCUSSION

### I.  PROCEDURAL DEFAULT

As a threshold matter, this Petition is subject to the doctrine of procedural default which ensures "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971); *see also* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of remedies available in state court). Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478,

---

[1]  Petitioner's Doctrine of Specialty and Vienna Convention claims overlap and are addressed together. (Petition, ECF No. 1 at  2-5).

489–91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46–47 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 482 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show 1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or 2) that failure to consider the claim on the merits would result in a miscarriage of justice, i.e., the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 314-16 (1995); *Murray*, 477 U.S. at 495–96; *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488) (internal quotation marks omitted).

## II.   STANDARD OF REVIEW

Abel's claims will be analyzed under the statutory framework of the federal habeas statute, 28 U.S.C. § 2254, which sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); *see also Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  Under the "unreasonable application" analysis at 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). "Rather, that application must be objectively unreasonable." *Id*. Thus, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams, 529 U.S. at 410 *Harrington*, 131 S.Ct. at 785 (emphasis in original).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "[E]ven if reasonable minds reviewing the record

might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (internal quotation marks and citation omitted).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and a petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* (quoting 28 U .S.C. § 2254(e)(1)).

## III.    CLAIMS

## A. DOCTRINE OF SPECIALTY AND STANDING TO CHALLENGE EXTRADITION

Abel claims that when he waived extradition to the United States, the charges against him were second-degree murder, first-degree assault, and a handgun offense; thus, it was illegal under the Doctrine of Specialty for the State of Maryland to issue a superseding indictment charging him with common law murder and expose him to the greater offense of first-degree murder. ECF. 1 at 2-4. Respondents counter that Abel's claim is procedurally defaulted and devoid of merit.

In rejecting this claim, the Post-Conviction Court stated:

> The Petitioner argues that the doctrine of specialty regarding extradition was violated when he was illegally convicted of 1st degree murder. The Doctrine of Specialty provides that Defendant may not be prosecuted for an

offense that is different than the offenses from which he was extradited. *U.S. v. Rauscher*, 119 US 407 (1886).

Pursuant to Maryland Rule 4-252, certain motions are mandatory and if not raised are waived. One such mandatory motion is when a defendant asserts that there is a defect in the institution of the prosecution. A claim that the extradition violates the rule of specialty is a challenge to the institution of the prosecution and must be raised in a pretrial motion pursuant to Maryland Rule 4-252(1). *See Ford v. United States*, 273 U.S. 593, 606 (1927) (holding that defendant's objection to personal jurisdiction was forfeited where defendant did not object before entering his plea), *United States v. Marquez*, 594 F.3d 855 (11th Cir. 2010) (holding that a claim that an extradition violates the rule of specialty is a challenge to the Court's personal jurisdiction over the Defendant, which falls under a claim of defect in instituting the prosecution, and must be raised in a pretrial motion pursuant to Federal Rule of Criminal Procedure 12; *Kohr v. State*, 40 Md. App. 92, 383 A.2d 1242, *cert. denied*, 283 Md. 735 (1978) (the Court of Appeals of Maryland in adopting Maryland Rule 4-252 decided, as a matter of judicial policy and administration, to make the Rule parallel to Fed. R. Crim. P. 12). Petitioner did not assert the Rule of Specialty as a bar to his prosecution until he filed his Supplemental Petition for Post Conviction Relief. Therefore, Petitioner has waived his right to assert the protection of the Rule of Specialty.

Although jurisdictions are split regarding whether an individual defendant has standing to raise the issue of a violation of the Doctrine of Specialty. *Compare, e.g., Shapiro v. Ferrandina*, 478 F.2d 894, 906 (2nd Cir), *cert. dismissed*, 414 U.S. 884 (1973) (principle of specialty arises out of treaty between two sovereign nations and, thus is a privilege of the extraditing state, not a right accruing to the accused), with, *e.g., United States v. Cuevas*, 847 F.2d 1417, 1426 (9th Cir. 1988), *cert. denied*, 489 U.S. 1012 (1989) (individual defendant may assert objections that the extraditing nation would be entitled to raise), this Court finds that there is no indication that the Vienna Convention creates individual rights for criminal defendants. *United States v. Al-Hamdi*, 356 F.3d 564, 574 n. 13 (4th Cir. 2004). Therefore, the Court finds that as Petitioner's home country, Jamaica has not filed a protest against the United States regarding the United States alleged violation, Petitioner does not have standing to assert the right of his country. *US. v. Humberto Alvarz Machain*, 504 U.S. 655, 681, n. 26 (1992).

Even assuming that Petitioner did have standing and did not waive his right to assert the Doctrine of Specialty the Court finds that the doctrine of specialty regarding extradition was not violated. As stated above, the Doctrine of Specialty provides that a defendant may not be prosecuted for an offense that is different than the offenses from which he was extradited. *See Ramscher, supra*. However, "the doctrine is based on principles of international comity." *United*

*States v. Oscar Fernando Cuevas*, 847 F.2d 1417, 1426 (9th Cir. 1988). To guarantee limited prosecution by nations seeking extradition of persons from the United States, the United States has guaranteed, pursuant to [the] treaty, that it will honor limitations placed on prosecution in the United States." *Id.* Therefore, "the appropriate test is whether the extraditing country would consider the acts for which the defendant was prosecuted as independent from those for which he was extradited." *United States v. Paroutian*, 299 F.2d 486, 491 (2d Cir. 1962). Since Maryland statutes do not define "murder," but instead merely designate the degree of murder, and leaves the common law sense of murder (unlawful homicide with malice aforethought) unimpaired, seeking only to graduate the measure of punishment according to the circumstances under which murder is committed, *Lindsay v. State*, 8 Md. App. 100, 258 A.2d 760 (1969), *cert. denied*, 257 Md. 734 (1970), this Court finds that although the facts presented to Jamaica cite to Maryland Criminal Law Article 4-202, Second Degree Murder, that Jamaica would not consider the acts for which the defendant was prosecuted as independent from those for which he was extradited. Therefore, the Court finds that the Doctrine of Specialty was not violated by Petitioner's conviction of First Degree Murder, instead of Second Degree murder.

For the above reasons, the Court will deny the Petitioner's request for post-conviction relief based on this allegation of error.

ECF No. 11, Ex. 15 at 5-7.

The post-conviction court also rejected Petitioner's claim his rights were violated under the Vienna Convention.

The Petitioner argued for the first time at the Post Conviction Hearing that his rights under the Vienna Convention were violated when he was not informed of his right to speak to his home country, Jamaica's consulate, once he arrived in the United States and was charged with a different crime than he originally was extradited for.

The State, in support of its argument of why the Court should not even consider or address Petitioner's claim about his Vienna Convention rights being violated, cited several Maryland appellate courts' decisions that did not remand the matter, even though a post conviction judge did not address a claim not contained in the Petition, but argued for the first time at the Post Conviction Hearing. *Fennell v. Warden, Maryland Penitentiary*, 236 Md. 423, 425, 204 A.2d 75, 76 (1964); *Cirincione v. State*, 119 Md. App. 471, 505, 705 A.2d 96, 112 (1998). Nevertheless, as there is no case law prohibiting the Court from addressing Petitioner's claim that his rights under the Vienna Convention were

violated, this Court will consider Petitioner's claim and will accordingly make a finding.

Although this Court has already found that Petitioner does not have standing to argue an alleged violation of the Vienna Convention and has waived his right to argue due to the fact that he did not argue this issue at the trial level or on appeal, this Court finds that Petitioner's rights under the Vienna Convention were not violated.

Article 36 of the Vienna Convention on Consular Relations, Apr. 24, 1963, [1970] 21 U.S.T. 77, 100-101, T.I.A.S, No. 6820, provides that when a foreigner is detained by authorities in a foreign country the individual has only a right "to have their consulate informed of their arrest or detention, not to have their consulate intervene." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 349 (2006). Here, Petitioner's consulate was already aware of his detention as he was extradited from Jamaica to the United States. The failure to inform a foreign national defendant of his or her right to consular notification may prevent him or her from becoming aware of Article 36 rights and asserting that right at trial, this is precisely the same as Miranda rights. "Nevertheless, if a defendant fails to raise his Miranda claim at trial, procedural defaults rules may bar him from raising the claim in a subsequent post conviction proceeding." *Id*. at 358; *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

However, "there is an exception if a defendant can demonstrate both 'cause' for not raising the claim at trial, and 'prejudice' from not having done so." *Massaro v. U.S.*, 538 U.S. 500, 504 (2003). Nevertheless, under the United States system, a lack of knowledge by a criminal defendant's attorney generally does not excuse a procedural default by the defendant, unless the attorney's overall representation falls below what is required by the 6th Amendment. *Sanchez-Llamas*, 548 U.S. at 357.

The Court finds that neither trial counsel nor appellate counsel representation fell below what is required by the 6th Amendment. The Court also finds that Petitioner was not prejudiced from either counsel not raising the claim as Jamaica was already aware of Petitioner detention. Therefore the Court will deny the Petitioner's request for post-conviction relief based on this allegation of error.

ECF No. 11, Ex. 7 at 7-8.

## 1. DOCTRINE OF SPECIALTY

The Doctrine of Specialty prohibits prosecuting an extradited prisoner for an offense other than that for which the surrendering nation agreed to extradite. *United States v. Day*, 700 F.3d 713, 721  (4th Cir. 2012) (citing *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (collecting cases).  Circuit courts that have ruled on this question are split as to whether a criminal "defendant has standing to raise the issue of a violation of the principle of specialty." *Davis*, 954 F.2d at 186 (collecting cases).[2] Respondents assert that because Abel did not raise the Doctrine of Specialty at trial or on direct appeal, the claim is procedurally defaulted.

Unless cause and prejudice or manifest injustice is shown, the state court's invocation of the firmly established and consistently followed waiver rule precludes federal review of this claim. *See, e.g.*, *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011); *Beard v. Kindler*, 558 U.S. 53, 53-54 (2009); s*ee also, e.g., Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350-60 (2006) (upholding application of procedural default rule with respect to claim under Vienna Convention); *United States v. Marquez*, 594 F.3d 855, 858-59 (11th Cir. 2010) (opining that the Doctrine affects personal jurisdiction over the defendant, a challenge is waived if not timely raised by defendant); *United States v. Rudi*, 453 Fed. Appx. 290, 292-93 (4th Cir. 2011) (citing *Davis*, 954 F.2d at 182 (4th Cir. 1992)) (same). Petitioner does not meet his burden to demonstrate cause or actual innocence to excuse procedural default.

Further, the state court's decision regarding Abel's lack of standing to raise the Doctrine of Specialty was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  The state post-conviction court correctly observed that the federal circuits are split on the question whether

---

[2]  This Court is unaware of any Fourth Circuit precedent where this question has been determined.

the Doctrine of Specialty confers a private cause of action. Resp. Ex. 15 at 6; *see also United States v. Al-Hamdi*, 356 F.3d 564, 574 n.13 (4th Cir. 2004) (expressing skepticism that treaty between nations created individual rights); *United States v. Molina-Chacon*, 627 F. Supp. 1253, 1264 (E.D.N.Y 1986) (recognizing that doctrine of specialty is privilege of the asylum state). Indeed, Abel concedes the standing question does not involve the application of clearly established Supreme Court precedent.  Petition at 4; Post-Conv. Hearing Trans. Ex 12 at 31-32, 48, 50. Thus, even if this claim had been fully presented to the state courts, it does not provide grounds to award habeas relief.

Abel waived his extradition, thereby casting doubt on whether the Doctrine of Specialty applies in this case. *See Molina-Chacon*, 627 F.Supp. at 1264 (refusing to apply doctrine of specialty where defendant waived extradition); *see also United States v. DiTommaso*, 817 F.2d 201, 212 (2d Cir.1987) (finding that the Doctrine of Specialty does not apply where defendant waived extradition and therefore was not actually extradited); *United States v. Vreeken*, 603 F.Supp. 715, 721 (D. Utah 1984), *aff'd* 803 F.2d 1085 (10th Cir.1986) (holding that waiver of extradition forecloses a specialty challenge and refusing to "inquire" into the voluntariness of the foreign waiver).

The Post-Conviction Court found the Doctrine of Specialty was not violated because Jamaica was informed that Abel was to be prosecuted for one generic count of murder and was also informed of the specific facts underlying the murder charge, which is what the Doctrine of Specialty requires. Resp. Ex. 15 at 6-7; Post-Conv. Hearing Trans. Ex 12 at 22, 43-44. "Since Maryland statutes do not define 'murder,' but instead merely designate the degree of murder, and leave the common law sense of murder (unlawful homicide with malice aforethought)

unimpaired, seeking only to graduate the measure of punishment according to the circumstances under which murder is committed," the Post-Conviction Court concluded that although the facts presented to Jamaica cite to Maryland Criminal Law Article 4-202, second-degree murder, that Jamaica would not consider the acts for which Abel was prosecuted as independent from those for which he was extradited. Resp. Ex.15 at 6-7.

Petitioner's exhibits filed with his reply show the arrest warrant issued on September 29, 2004, charged him with second-degree murder, first-degree assault and use of a handgun. Pet. Response, ECF No. 19, Ex. 5. The warrant for Abel's arrest issued by Jamaica's Magistrate Court reads that Abel was accused of one count of murder and one count of use of a handgun in a crime of violence. *Id.* Ex. 3-4.  In light of the highly deferential review accorded to state court proceedings during habeas review, the court finds that petitioner has not met his burden to show the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## 2.  VIENNA CONVENTION

Petitioner claims his rights under the Vienna Convention were violated because he was not apprised of his right to speak to his home country, i.e. the Jamaican Consulate, once he returned to the United States. The first time Petitioner raised this claim was at the post-conviction hearing. As such, this claim is procedurally defaulted.

In any event, there is no merit to this claim. The Vienna Convention provides that individuals detained in a foreign country shall be informed that they may request the assistance

of their country's consulate and that consular officers may visit detained individuals in prison. *See* Vienna Convention on Consular Relations, art. 36, Apr. 24, 1963, 21 U.S.T. 77, 100–101. First, it is not clear whether Article 36 of the Vienna Convention creates individually enforceable rights. *See Bell v. True*, 413 F.Supp.2d 657, 729–32 (W.D. Va. 2006) (surveying relevant authorities and concluding that "no clearly established federal law directs that Article 36 creates an individually enforceable right to consular access"); *see also Amara v. United States*, 2010 WL 2998663, at *3, Civ. No. RWT-10-372, RWT-10-1385, Cr. No. RWT-08-548, RWT-09-106 (D. Md. July 22, 2010) (stating it is unclear whether the Vienna Convention creates any actionable individual rights that could be asserted in a §2255 action). The Fourth Circuit has expressed doubt in dicta that Article 36 confers individual rights. *See United States v. Al–Hamdi*, 356 F.3d 564, 574 n.13 (4th Cir. 2004) (stating that it is "doubtful" that the Vienna Convention creates individual rights for consular notification violations). As the Supreme Court has observed, the Convention merely provides for consular notification of a foreign national's arrest; it does not guarantee intervention by the consulate. *See Sanchez–Llamas v. Oregon*, 548 U.S. 331, 349 (2006).

Assuming arguendo that the Vienna Convention creates individually enforceable rights, an individual asserting a violation of such rights must, at a minimum, show resulting prejudice. *See Medellin v. Dretke*, 544 U.S. 660, 665 n.3 (2005) ("[A] successful Vienna Convention claimant likely must demonstrate prejudice.") (citing *Breard*, 523 U.S. at 375–77); *Bonilla v U.S.* Civ. No. DKC-09-2826, Cr. No. DKC-07-135 (March 15, 2013) (stating that even if a habeas petitioner has enforceable rights under the Vienna Convention, there must be a specific showing of prejudice); *Zoa v. United States*, Civ. No. PJM 10–2823, Cr. No. PJM 06–235, 2011 WL

3417116, at *3 (D. Md. Aug.1, 2011) (denying petitioner's § 2255 motion to modify his sentence where he "merely point[ed] out that he was denied the opportunity to speak with the consulate" but failed to show that "his case was prejudiced" in any way); *Hernandez v. United States*, 280 F.Supp.2d 118, 124–25 (S.D.N.Y.2003) (petitioner was not entitled to relief under § 2255 for a conceded violation of the Vienna Convention where he failed to explain how consultation with his embassy would have "altered the outcome of the case in any way").   In this case, Petitioner's conclusory assertions fail to establish any prejudice as a result of the alleged violation. Abel fails to explain how consultation with the Jamaican Consulate would have altered his actions or the outcome of the case.

For these reasons, the Post-Conviction Court's rejection of this claim was not objectively unreasonable nor resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented.   Thus even if the claim were not procedurally defaulted, it provides no cause for habeas relief.

## B. CLAIM THAT THE EXTRADITION WAIVER WAS UNKNOWING AND INVOLUNTARY

Petitioner claims his extradition waiver was not knowing and voluntary because he was not informed that he would be charged with first-degree murder. Petition, ECF No. 1 at 5-6. The state Post-Conviction Court found this claim waived because Abel did not raise it at trial or on direct appeal. Resp. Ex. 15 at 8-9.  Absent proof of cause and prejudice or actual innocence, the claim is procedurally defaulted.

Further, Petitioner fails to meet his burden to show how the Post-Conviction Court's denial of this claim amounts to an unreasonable application of clearly established federal law as determined by the Supreme Court. *See e.g.  Molina-Chacon*, 627 F.Supp. 1253, 1264 (E.D.N.Y

15

1986) ("It is not appropriate for a federal court to determine whether a waiver of extradition in a foreign country was knowing or voluntary."). Thus, even were this claim not procedurally defaulted, it fails to surmount the deferential statutory standard for evaluating state-court rulings.

### C.  INEFFECTIVE ASSISTANCE OF COUNSEL

A defendant has a constitutional right to effective assistance of counsel. In order to establish ineffective assistance, it must be shown that 1) counsel's performance was deficient, and 2) the performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below "an objective standard of reasonableness." *Id*. at 688.

To satisfy the first part of this standard, a petitioner must demonstrate counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id*. at 687 (internal quotation marks and citation omitted). The standard for assessing such competence is "highly deferential" and there is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 689. A defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.' " *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 131 S.Ct. at 790 (internal quotation marks and citation omitted). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's

actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

A showing of prejudice requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and 2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694. "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *Harrington*, 131 S.Ct. at 787–88 (citing *Strickland*, 466 U.S. at 687). A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Strickland*, 466 U.S. at 697. Petitioner's claims will be analyzed under these standards.

Petitioner alleges trial counsel was ineffective for failing to inform him of his right to contact the Jamaican consulate. Petition, ECF No. 1 at 6-11. "Even if the Vienna Convention were violated, however, the Supreme Court has noted that an Article 36 violation does not support a claim of ineffective assistance of counsel because an attorney's lack of knowledge concerning the Vienna Convention does not, alone, fall below what is required by the Sixth Amendment." *Amar*a, 2010 WL 2998663 at 3, citing *Sanchez–Llamas v. Oregon*, 548 U.S. at 357 n.6.

The Post-Conviction Court rejected Petitioner's claim, stating that if it is assumed that Vienna Convention conveys a private right of action and counsel's failure to inform him of his right to contact the consulate somehow fell below an objective standard of reasonableness, Abel failed to show prejudice to satisfy the *Strickland* standard. The post-conviction court's decision is entitled to deference under the standards set forth in *Strickland* and § 2254(d) and will not be disturbed.

### D.  CLAIM THE TRIAL COURT LACKED JURISDICTION

Petitioner's assertion that the trial court lacked jurisdiction and his sentence was illegal because the Doctrine of Specialty was violated essentially repeats his first claim.  Petition, ECF No. 1 at 11-14; *see supra* pp. 7-13.  For reasons already discussed herein, the claim is procedurally defaulted, devoid of merit, and will be denied and dismissed.

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Petitioner has failed to make a substantial showing he was denied a constitutional right, and this Court finds reasonable jurists would not find the denial of habeas relief in this case debatable. Therefore, a Certificate of Appealability will be denied.

**CONCLUSION**

For the foregoing reasons, the Court concludes the Petition provides no grounds for habeas corpus relief. A separate Order follows denying the Petition and denying a Certificate of Appealability.


June 10, 2014                                                    /s/
Date                                                ROGER W. TITUS
                                          UNITED STATES DISTRICT JUDGE